## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| STAMPEDE MEAT, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHELLE LUJAN GRISHAM, in her official | ) | |
| capacity as GOVERNOR OF THE STATE OF | ) | |
| NEW MEXICO, HECTOR BALDERAS, in his | ) | |
| official capacity as the ATTORNEY GENERAL | ) | |
| FOR THE STATE OF NEW MEXICO, BILLY | ) | |
| J. JIMENEZ, in his official capacity as the | ) | Case No.: _____ |
| ACTING CABINET SECRETARY OF THE | ) | |
| NEW MEXICO DEPARTMENT OF HEALTH, | ) | |
| JAMES C. KENNEY, in his official capacity as | ) | |
| the CABINET SECRETARY OF THE | ) | |
| NEW MEXICO ENVIRONMENT | ) | |
| DEPARTMENT, THE NEW MEXICO | ) | |
| ENVIRONMENT DEPARTMENT and THE | ) | |
| NEW MEXICO DEPARTMENT OF HEALTH, | ) | |
| | ) | |
| Defendants. | ) | |

## VERIFIED COMPLAINT AND APPLICATION FOR
## DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

COMES NOW, Plaintiff, Stampede Meat, Inc., ("Stampede Meat" or the "Company"), and in conjunction with its Emergency Request for Hearing, files this Verified Complaint against Defendants Michelle Lujan Grisham, in her official capacity as Governor of the State of New Mexico, Hector Balderas, in his official capacity as the Attorney General for the State of New Mexico, Billy J. Jimenez, in his official capacity as Acting Cabinet Secretary of the New Mexico Department of Health, James C. Kenney, in his official capacity as the Cabinet Secretary of the New Mexico Environment Department, the New Mexico Environment Department and the New Mexico Department of Health (collectively, "Defendants"), and states as follows:

## INTRODUCTION

1.     Stampede Meat is one of the United States' largest manufacturer of portion-controlled proteins (including beef, chicken, turkey and pork) and meals (which include vegetables, soups and alternative proteins).  Stampede Meat takes seriously its critical role in helping feed the nation during the coronavirus ("COVID-19") pandemic.  From the outset of the pandemic, however, Stampede Meat has focused not just on providing critical food resources to the nation—it has also prioritized the health and safety of Stampede Meat's significant workforce. Indeed, Stampede Meat developed and implemented a COVID-19 response plan well before any governmental body required it to do so, and Stampede Meat has repeatedly updated its plan to ensure it fully complies with—and in many instances exceeds—all applicable federal, state and local COVID-19 guidelines. In fact, the New Mexico Department of Health, including Defendant Jimenez personally, and the New Mexico Occupational Safety and Health Administration ("New Mexico OSHA") *approved* Stampede Meat's COVID-19 plan in early May 2020.  Throughout the pandemic, Stampede Meat has deftly balanced its role as a vital piece of critical national infrastructure with its commitment to the safety and wellbeing of its employees and local community.

2.     The State of New Mexico has consistently shared the view of the Federal Government that Stampede Meat is critical to the Nation's response to this pandemic, repeatedly designating Stampede Meat an "Essential Business."  Yet three days ago, the Defendants sought to immediately close Stampede Meat for fourteen days pursuant to a recently issued public health order purportedly requiring closure of certain businesses experiencing four or more positive COVID-19 tests in a fourteen day period—which for Stampede Meat represents less than 1% of its Sunland Park workforce.  The Defendants seem to have based this determination on an unsupported (and unstated) assertion that Stampede Meat is a "business that poses a significant

health risk, as determined by the Department of Health." Despite repeated inquiries, Defendants have failed to provide the basis of that determination. Additionally, even when the United States Department of Agriculture ("USDA") offered to speak with the Department of Health about lending testing resources to Stampede Meat to enable it to more efficiently and effectively identify potentially infected employees, while still remaining operational to address the nation's food supply, the Department of Health, through Defendant Jimenez, declined.

3.      Defendants' action is preempted by an Executive Order signed by the President on April 28, 2020, prohibiting state authorities from directing meat and poultry processing facilities—like Stampede Meat—to close when that facility is in compliance with applicable federal guidelines, as is Stampede Meat. The Stampede Meat Closure Order also violates the U.S. Constitution and New Mexico Constitution because it has been issued in an arbitrary and capricious manner, absent due process.

4.      Stampede Meat, its workforce, and the nation will suffer irreparable harm absent an order freezing the *status quo ante*. Further, Stampede Meat is likely to succeed on the merits of its claim for a declaratory judgment and the balance of the equities favors a restraining order in this case; one preventing Defendants from closing Stampede Meat's operations, even as it will allow time for Stampede Meat to address any concerns Defendants may have regarding the safety of its operations and compliance with applicable COVID-19 guidance. Stampede Meat has already attempted—repeatedly—to work with the Defendants to address any legitimate concerns. It has been met with silence aside from this most recent direction to fully shut down operations—direction that ignores the express orders of the President of the United States and the Secretary of Agriculture—or risk civil and criminal penalties.

## PARTIES

5.     Plaintiff Stampede Meat, Inc., a Delaware corporation with its principal place of business in Bridgeview, Illinois, is one of the United States' largest manufacturer of portion-controlled proteins (including beef, chicken, turkey and pork) and meals (which include vegetables, soups and alternative proteins).  Stampede Meat specializes in custom-made, center-of-the-plate beef, pork and chicken products for the needs of restaurants, hospitality, retail, supermarket, casino, home delivery, and other industries.  Its customers include Costco, Wal-Mart, Firehouse Subs, Applebee's, Panda Express, International House of Pancakes, Denny's, Schwan's Foods and other major restaurants and food retailers throughout New Mexico and the country.  In many instances Stampede is the exclusive supplier of these products, leaving the aforementioned customers without a supply source in the event of a shut down.  Stampede Meat serves its customers through four production facilities, including one in Sunland Park, New Mexico – which Stampede Meat opened in December 2018.  That facility has an annual capacity of **100 million pounds of meat**.  Nationwide, Stampede Meat's team consists of approximately 1600 employees and temporary workers.  Stampede Meat's Sunland Park workforce varies depending on production needs.  During the past two weeks, between 550-575 team members worked at Stampede Meat's Sunland Park facility.

6.     Defendant Michelle Lujan Grisham is the Governor of the State of New Mexico and is named in her official capacity. Defendant Lujan Grisham may be served at the New Mexico State Capital, 490 Old Santa Fe Trail, Room 400, Santa Fe, New Mexico 87501.

7.     Defendant Hector Balderas is the Attorney General for the State of New Mexico and is named in his official capacity. Defendant Balderas may be served at 408 Galisteo Street, Santa Fe, New Mexico 87501.

4

8.      Defendant Billy J. Jimenez is the Acting Cabinet Secretary of the New Mexico Department of Health and is named in his official capacity.  He may be served at 1190 S. St. Francis Drive, Santa Fe, New Mexico 87505.

9.      Defendant James C. Kenney is the Cabinet Secretary of the New Mexico Environment Department and is named in his official capacity. He may be served at 1190 St. Francis Drive, Santa Fe, New Mexico 87505.

10.     Defendant New Mexico Environment Department may be served at 1190 S. St. Francis Drive, Santa Fe, New Mexico 87505

11.     Defendant New Mexico Department of Health may be served at 1190 S. St. Francis Drive, Santa Fe, New Mexico 87505.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because Stampede Meat's claims arise under the Constitution and laws of the United States of America.

13.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) because all defendants are residents of the State of New Mexico and a substantial part of the events or omissions giving rise to the claims occurred in the District of New Mexico.

## FACTUAL BACKGROUND

### A.  Stampede Meat is an Essential Business Providing Food Supplies to the Nation

14.     Stampede Meat is part of the nation's critical food supply chain and has a responsibility during the ongoing pandemic to continue providing meat, poultry, turkey, pork, alternative proteins and other food to Americans in New Mexico and throughout the country. Pursuant to the U.S. Cybersecurity & Infrastructure Security Agency ("CISA") guidance, Stampede Meat is an essential business, and its workforce is part of the "Critical Infrastructure

Workforce," meaning that Stampede Meat must remain open and continue in-person work during this COVID-19 pandemic. *See,* Advisory Memorandum from Christopher C. Krebs, Director of Cybersecurity and Infrastructure Security Agency on Guidance on Essential Critical Infrastructure Workers, *herein attached as Exhibit 1*.

15.     In response to the closure of meat and poultry processing plants throughout the country, President Trump invoked the Defense Production Act ("DPA") and issued an Executive Order on April 28, 2020 requiring meat and poultry plants, like Stampede Meat, to remain open to prevent food shortages during the pandemic. *See*, Exec. Order No. 13,917, 85 C.F.R. 26313 (2020), *herein attached as Exhibit 2*.  Additionally, New Mexico deemed Stampede an "essential business" under its COVID-19 public health orders, including the Department of Health's October 22 Order  ( the "October 22, 2020 Order"). See, New Mexico Department of Health, Public Health Order (Oct. 22, 2020), *herein attached as Exhibit 3*.

16.     In issuing the April 28 Executive Order, the President emphasized that "[i]t is important that processors of beef, pork, and poultry . . . in the food supply chain continue operating and fulfilling orders to ensure a continued supply of protein for Americans." *Ex. 2*.  Importantly, the President wrote:

> Such closures [of beef, pork, and poultry processors] threaten the continued functioning of the national meat and poultry supply chain, undermining critical infrastructure during the national emergency. Given the high volume of meat and poultry processed by many facilities, any unnecessary closures can quickly have a large effect on the food supply chain. For example, closure of a single large beef processing facility can result in the loss of over 10 million individual servings of beef in a single day. Similarly, under established supply chains, closure of a single meat or poultry processing facility can severely disrupt the supply of protein to an entire grocery store chain.

*Id.*

17.     On April 28, 2020, the Secretary of Agriculture issued a statement regarding the President's April 28 Executive Order, affirming that the Department of Agriculture would operate

in accordance with Centers for Disease and Prevention Control ("CDC") and U.S. Occupational

Safety and Health Administration ("federal OSHA") guidance:

> The Centers for Disease Control and Prevention (CDC) of the Department of Health and Human Services and the Occupational Safety and Health Administration (OSHA) of the Department of Labor have put out guidance for plants to implement to help ensure employee safety to reopen plants or to continue to operate those still open. Under the Executive Order and the authority of the Defense Production Act, ***USDA will work with meat processing to affirm they will operate in accordance with the CDC and OSHA guidance,*** and then work with state and local officials to ensure that these plants are allowed to operate to produce the meat protein that Americans need. USDA will continue to work with the CDC, OSHA, FDA, and state and local officials to ensure that facilities implementing this guidance to keep employees safe can continue operating.

*See*, Statement from Sonny Perdue, U.S. Secretary of Agriculture, USDA to Implement President

Trump's Executive Order on Meat and Poultry Processors (Apr. 28, 2020), ***emphasis added***, *herein*

*attached as Exhibit 4*.

### B. Stampede Meat Has Remained A Leader in Responding to the COVID-19 Pandemic

18.     Stampede Meat recognizes its responsibility to help feed the public and takes great

pride in being able to serve the country during its time of need.  Stampede Meat is also firmly

committed to providing a safe work environment for its team members, who are heroes on the

front line of sustaining operations during a worldwide pandemic.

19.     Accordingly, Stampede Meat has been at the forefront of the COVID-19 response.

In early March 2020, before New Mexico, Illinois or even the federal government issued any

significant directives regarding operations during the pandemic, Stampede Meat formed a COVID-

19 response team—consisting of, among others, its human resources, safety, supply chain and

operations departments—and released its first COVID-19 response plan.

20.     Stampede Meat's COVID-19 response team meets each week, and regularly

consults with outside advisors to monitor evolving CDC, federal OSHA, United States Department

of Agriculture ("USDA"), as well as guidelines issued by New Mexico, Illinois, and applicable

local entities.  As a result, Stampede Meat has revised its response plan numerous times to ensure it complies with applicable guidelines and to protect the Stampede Meat family and anyone who enters its facilities. *See*, Stampede Meat's Current COVID-19 Response Plan, revised October 30, 2020, *herein attached as Exhibit 5*.  This response plan includes more than 80 safety measures, including, for example:

- conducting daily screening and temperature checks;

- requiring employees to wear three-tiered facial protection (including face masks, neck warmers pulled over their nose and mouth, *and* plexiglass face shields);

- sanitizing high touch-point areas every 30 minutes;

- modifying procedures to increase social distancing throughout its facilities;

- providing plastic dividers in cafeteria area;

- implementing aggressive contact tracing (including through the use of video to trace interactions) and quarantining protocols;

- nightly CDC-compliant sanitizing of the entire facility; and

- taking various steps to maximize social distancing, including reconfiguring some areas of production.

*Id*.

## C. Stampede Meat Complies With—and Often Exceeds—All Applicable COVID-19 Health and Safety Protocols

21.    The CDC and federal OSHA have issued joint guidance outlining the protocols meat and poultry processors should follow to protect their workforces from COVID-19. See, Center for Disease Control & Occupational Safety and Health Administration, Joint Meat Processing Guidance, herein attached as Exhibit 6.  Stampede Meat's COVID-19 response plan meets and, in many areas, goes beyond this joint guidance.  For example, Stampede Meat's production employees wear three-tiered facial protection.  Moreover, Stampede Meat's Sunland

Park facility is not a cramped, close-quartered operation, as is the case with many other meat processing facilities.  On the contrary, photos taken during operations on November 4 show the Sunland Park facility and operations are configured to allow for employees to socially distance the majority of the time.  *See*, Stampede Meat Facility Photograph Depictions, *herein attached as Exhibit 7*.

22.     In early May 2020, the Department of Health *and* New Mexico OSHA reviewed Stampede Meat's COVID-19 response plan.  Stampede Meat provided both agencies with the CDC and federal OSHA's Joint Meat Processing Guidance and encouraged them to compare Stampede Meat's response plan to these federal requirements in addition to analyzing the plan in the context of New Mexico's guidelines.  *See,* Email between Michael Palmer, Stampede Meat's Attorney, Andrew P. Knight, Assistant General Counsel for the New Mexico Environment Department, and Billy Jimenez, former Department of Health General Counsel and current Acting Secretary, May 5, 2020, *herein attached as Exhibit 8.*

23.     New Mexico OSHA and the Department of Health ***approved*** Stampede Meat's response plan in early May 2020 and has never revoked that approval or raised any concerns with Stampede Meat or its counsel about the Company's COVID-19 response plan.  To the contrary, even after that approval was received, Stampede Meat continued to add more safety protocols above and beyond those required.

24.     In addition, Stampede Meat partnered with the Department of Health to conduct diagnostic COVID-19 testing of its entire workforce three times in May 2020 to identify infected, asymptomatic team members and further reduce potential exposure in the workplace.  During the first round of testing, 7.5% of employees tested positive, of which 93% were asymptomatic. During the second round of testing, 4.7% of employees tested positive; all were asymptomatic.

The final test resulted in only one new positive case.  The Department of Health effectively ended its testing protocol with Stampede Meat.  In doing so, Aja Sanzone, MD, Infectious Disease Bureau Medical Director, praised Stampede Meat's collaboration with the Department of Health and its testing protocol, writing that it "was instrumental in the prevention of further spread within the facility and the community and I believe your success will serve as a model to other businesses not only locally but even nationally."  *See*, Email from Aja Sanzone, Infectious Disease Bureau Medical Director, to Michael Palmer, Stampede's Attorney, *herein attached as Exhibit 9*.

### D.  <u>The Department of Health's October 22, 2020 Public Health Order</u>

25.     On October 22, 2020 the Department of Health, through Defendant Jimenez and under authority provided by Defendant Grisham, issued a revised Public Health Order (the "October 22, 2020 Order", Ex. 3).  In it, Defendants reiterated the designation of "Essential businesses" to include "food cultivation, processing, or packaging operations," such as Stampede Meat.  The October 22 Order also defines a host of other categories of business, including "food and drink establishments," "close-contact businesses," "places of lodging" and "retail spaces." None of those categories include Stampede Meat.

26.     The October 22, 2020 Order also states that any "food and drink establishment," "close-contact business," "place of lodging," "retail space" or "other business that poses a significant public health risk, as determined by the Department of Health" must close when four employees receive positive rapid response COVID-19 tests within a rolling 14-day period.  (Ex. 3, ¶ 15.).  The October 22, 2020 Order does not provide that such a 14-day closure mandate is applicable to "Essential businesses."  It further does not define how the Department of Health and Defendant Jimenez will determine if a business "poses a significant public health risk," or how such a determination can be challenged.  The October 22, 2020 Order does, however, state that

certain "retail spaces" may be allowed to stay open even after four positive tests if it is determined that the "business is a necessary provider of goods and services" within the community.

### E. The Department of Health Sends a Closure Order to Stampede Meat

27.     Despite (1) Stampede Meat's continued efforts to be a leader in the response to the COVID-19 pandemic; (2) the State of New Mexico's designation of Stampede Meat as an essential business; (3) the President of the United States' designation of Stampede Meat as an essential business; (4) the Department of Health's explicit praise of Stampede Meat's health and safety protocols; and (5) the exclusion of "Essential businesses" from the October 22, 2020 Order's mandate of closures after certain positive tests, on November 3, 2020, Defendants served Stampede Meat with a "Notice of Immediate Closure Pursuant to Public Health Order" ("Stampede Closure Order").  *See*, Letter from Billy Jimenez, Acting Cabinet Secretary of the New Mexico Department of Health, to Stampede Met, Inc. regarding closure notice, *herein attached as Exhibit 10*.

28.     In the Stampede Closure Order, the Department of Health does not state that Stampede Meat poses a "significant public health risk," or that it fits into any of the other defined businesses to which the closure directive applies.  At this writing Defendants have, at no point, notified Stampede Meat of any basis to change its prior departmental determination that Stampede Meat's response to COVID-19 was not only approved, but worthy of praise.

29.     And while it is true that during the 14 days prior to November 4, more than four Stampede Meat team members tested positive for COVID-19, each of those individuals are currently quarantining and not present in Stampede Meat's workplace.  Moreover, Stampede Meat has conducted contact tracing and required all of those who came in exposed close contact with the infected individuals to also quarantine.   To Stampede Meat's knowledge, none of its current, active workforce has been infected with COVID-19.

30.     Moreover, there is no indication that the Stampede Meat facility is either a source of COVID-19 spread, nor a significant public health risk.  To the contrary, given the significant safety protocols, the Stampede Meat facility is likely a *safer* location than outside of the facility. Inside the facility, three layers of Personal Protective Equipment are required, plastic dividers are utilized and significant cleaning and sanitizing is undertaken.

**F.  The Department of Health Refuses to Engage with Stampede Meat Regarding the Stampede Closure Order**

31.     The Stampede Closure Order conflicts with, and is therefore preempted by, President Trump's invocation of the DPA and his April 28, 2020 Executive Order requiring the Secretary of Agriculture to take all appropriate measures to ensure that meat and poultry processors continue operations consistent with CDC and federal OSHA's Joint Meat Processing Guidance.

32.     Indeed, The Solicitor of Labor at the U.S. Department of Labor and the Principal Deputy Assistant Secretary for OSHA made a joint statement explaining that "because of the President's invocation of the DPA, no part of the Joint Meat Processing Guidance should be construed to indicate that state and local authorities may direct a meat and poultry processing facility to close, to remain closed, or to operate in accordance with procedures other than those provided for in this Guidance."  *See*, Press Release, U.S. Department of Labor, Statement of Enforcement Policy by Solicitor of Labor Kate O'Scannlain and Principle Deputy Assistant Secretary for OSHA Loren Sweatt Regarding Meat and Poultry Processing Facilities (April 28, 2020),  herein attached as Exhibit 11.

33.     Yet the new Stampede Closure Order puts Stampede Meat in the potential dilemma of having to determine whether it will comply with Defendants' state-issued directive, or whether it should comply with the plain meaning (and superior) order from the President of the United

States to comply with federal regulations and **stay open**, providing critical resources for the nation's food supply.

34.     On November 4, Stampede Meat reminded the Department of Health of the above context, including the Department of Health's and New Mexico OSHA's approval of its COVID-19 response plan, the Company's compliance with CDC and federal OSHA's Joint Meat Processing Guidance, and the fact that the relevant infected employees appear to have contracted the virus outside of work.  Stampede Meat also invited the Department of Health to review its response plan and come to its Sunland Park facility to analyze in person all of the Company's safety protocols.  Stampede Meat offered to again partner with the Department of Health to test its entire Sunland Park workforce every two weeks to identify any asymptomatic, but infected team members, so they, too, could be quarantined.  Finally, Stampede Meat offered to reduce its operations by 30% to allow for increased social distancing at work, while minimizing any negative impact to the food supply that Stampede Meat provides as an essential business. *See,* Email between Michael Palmer, Attorney for Stampede Meat, and Christopher Woodward, Acting General Counsel for New Mexico Department of Health (Nov. 5, 2020), *herein attached as Exhibit 12*.

35.     Proactively, on November 5, Stampede Meat operated with a 30% reduction in its workforce, seeking to assuage any concerns that Defendants may have, but also seeking to avoid catastrophic losses to the Company, its customers, consumers, and the community—not to mention the significant negative impact on the nation's food supply.   However, after Stampede Meat's operations began on November 5, the Department of Health and Defendant Jimenez rejected the Company's proposal for continuing reduced operations, testing, and additional oversight as a

method for resolving any of Defendants' concerns about the health risks posed by Stampede Meat continuing to operate.  (Ex. 12.).

36.     During discussions with the Defendants about implementing an aggressive testing protocol as a possible solution here, the Department of Health indicated that it did not have sufficient resources to conduct testing at Stampede Meat.  In response, Stampede Meat, through counsel, contacted Shawna Newsome, Chief of Staff, Office of Food Safety at USDA. Ms. Newsome said the federal government may be able to assist with testing resources, which would allow Stampede Meat to test its entire workforce, identifying any asymptomatic, but infected workers, so they can quarantine, and continue operating.  Stampede Meat's counsel communicated this suggestion to the Department of Health during the afternoon of November 5 and offered to arrange a call between the Department of Health, Ms. Newsome and Stampede Meat's counsel to explore this option.  The Department of Health and Defendant Jimenez did not participate (though other Defendants did).  (Ex. 12.)

### G.  Defendants are Issuing Closure Orders in an Arbitrary and Capricious Manner

37.     Defendants have taken an *ad hoc*, arbitrary approach to its closure notices.  Indeed, its Rapid Response Watch List, which details businesses and the number of positive COVID-19 tests at each, contains a host of other businesses with more than 4 positive tests, yet only three— including Stampede Meat—have been ordered to close.  Other businesses which handle food have been allowed to stay open despite such positive tests—yet Defendants proceeded to shut down a critical element of the local, regional and national food supply chain.  Moreover, because the October 22, 2020 Order places the same positive test threshold (four) on businesses regardless of size, nature or without consideration of their efforts to meet applicable federal and state guidelines, Defendants' closure action necessarily causes a disparate impact to one entity.  Indeed, for a

company like Stampede Meat, it could be well below the State's COVID-19 infection rate and yet *still* exceed the four-test threshold just because it employs more than 500 people.

## H. **Stampede Meat—and Many Others—Will Suffer Irreparable Harm If Forced to Close**

38.     Closing Stampede Meat's operations until November 17 will undoubtedly cause irreparable harm.  Millions of pounds of meat will need to be destroyed if Stampede Meat is forced to close.  Stampede Meat manufactures a million pounds of meat and poultry each week in its Sunland Park facility for major restaurants, grocery stores, and other food distributors in New Mexico and throughout the country.  Closing Stampede Meat's plant will leave orders unfilled or shorted.  Given that many of these products are exclusively produced by Stampede, this will lead to Stampede losing customers, as it has in the past.  For example, Stampede Meat complied with the Department of Health's demands that it significantly reduce its operations prior to the first round of COVID-19 testing in May 2020.  That reduction forced Stampede Meat to short orders, which led to Sam's Club pulling its business from the Company.  New Mexico has resisted efforts to reimburse companies for losses resulting from COVID-19 shutdowns.  Similarly, Stampede Meat's insurance has rejected business interruption claims.  Accordingly, Stampede Meat would have no reasonable ability to recoup its losses and, therefore, no adequate remedy at law.

39.     Closing Stampede Meat will also have detrimental impacts on the food supply available in New Mexico and throughout the country.  As the country has already experienced, shuttering food processing plants leads to food shortages.  Indeed, that is precisely why the President issued the April 28 Executive Order and invoked the DPA—to prevent a scenario in which citizens in this country have to fight both a pandemic *and* a shortage of critical food supplies. The Department of Health is attempting to countermand that federal order, in the process causing unnecessary and unwarranted damage.

15

40.     Closing Stampede Meat will also negatively impact consumers, Stampede Meat's workforce and their families, the Sunland Park community, New Mexico and the nation.  It is well-documented that in May 2020, Costco and Wal-Mart—both Stampede Meat customers—and many other supermarkets rationed meat and poultry as a result of supplier shutdowns.    Allowing the Department of Health to ignore the President's Executive Order and close Stampede Meat and other meat and poultry processing companies will lead to similar food shortages and rationing. Moreover, Stampede Meat's loss of business will force it to reduce its workforce and reduce employment opportunities for the surrounding community.

## COUNT I
## VIOLATION OF THE UNITED STATES CONSTITUTION

### A. The April 28, 2020 Executive Order Preempts the October 22, 2020 Order and the Stampede Closure Order

41.     Stampede Meat incorporates by reference and re-alleges the allegations contained in Paragraphs 1 through 38 as if fully stated herein.

42.     The Supremacy Clause of the United States Constitution provides that federal law "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." U.S. Const., Art. VI, cl. 2.  State laws that conflict with federal laws are necessarily preempted. *Arizona v. United States,* 567 U.S. 387, 399 (2012).  Federal laws with preemptive force are not limited to statutes and include executive orders.  *See, e.g., Old Dominion Branch No. 496, Nat. Ass'n of Letter Carriers, AFL-CIO v. Austin,* 418 U.S. 264, 273, n.5 (1974) (valid executive orders may preempt state law through the Supremacy Clause); *United States v. Am. Tel. & Tel. Co.,* 552 F.Supp. 131, 154-55 (D.D.C. 1982) (state law preempted by federal court decree).

43.     Significantly, preemption applies even where federal and state laws "share the same goals."  *Crosby v. National Foreign Trade Council,* 530 U.S. 363, 379 (2000).  For, "[t]he fact of

a common end hardly neutralizes conflicting means," *id.,* and, in fact, "'conflict is imminent' whenever 'two separate remedies are brought to bear on the same activity.'" *Wisconsin Dept. of Industry v. Gould Inc.,* 475 U.S. 282, 286 (1986) (citations omitted). This is especially so where the state law threatens to undermine the federal government's flexibility and discretion to address a particular subject matter. *Crosby* illustrates that point. There, the Supreme Court concluded that a Massachusetts law prohibiting state agencies from purchasing goods or services from companies doing business with Burma was preempted by a federal law imposing sanctions on that country. *Crosby*, 530 U.S. at 388. In doing so, the Court recognized that "[b]ecause the state Act's provisions conflict with Congress's specific delegation to the President of flexible discretion, with limitation of sanctions to a limited scope of actions and actors, and with direction to develop a comprehensive, multilateral strategy under the federal Act, it is preempted, and its application is unconstitutional, under the Supremacy Clause."

44. Through the DPA, Congress gave the President discretion to determine the "manner," "conditions," and "extent" of the operations of critical infrastructure industries (including meat processors like Stampede Meat) during a national emergency. 50 U.S.C. § 4511. The DPA grants the President "great flexibility" in doing so, including "informal means of persuasion" or more "formal and technical acts." *E. Air Lines, Inc. v. McDonnell Douglas Corp.,* 532 F.2d 957, 993-94 (5th Cir. 1976). Any state law that is in conflict with the President's determinations as to the manner, conditions and extent of operations is "naturally" preempted. *Crosby,* 530 U.S. 363, 372 (2000).

45. Here, the President's April 28 Executive Order directed the Secretary of Agriculture "to ensure that meat and poultry processors continue operations consistent with the guidance for their operations jointly issued by the CDC and OSHA." Executive Order No. 13,917,

85 Fed. Reg. 26,313 (April 28, 2020).  In doing so, the President emphasized that "[i]t is important that processors of beef, pork, and poultry . . . in the food supply chain continue operating and fulfilling orders to ensure a continued supply of protein for Americans."  *Id.*  Importantly, the President wrote:

> Such closures [of beef, pork, and poultry processors] threaten the continued functioning of the national meat and poultry supply chain, undermining critical infrastructure during the national emergency. Given the high volume of meat and poultry processed by many facilities, any unnecessary closures can quickly have a large effect on the food supply chain. For example, closure of a single large beef processing facility can result in the loss of over 10 million individual servings of beef in a single day. Similarly, under established supply chains, closure of a single meat or poultry processing facility can severely disrupt the supply of protein to an entire grocery store chain.

*Id.*

46.     On April 28, 2020, the Secretary of Agriculture issued a statement regarding the President's April 28 Executive Order, affirming that the Department of Agriculture would operate in accordance with CDC and federal OSHA guidance:

> The Centers for Disease Control and Prevention (CDC) of the Department of Health and Human Services and the Occupational Safety and Health Administration (OSHA) of the Department of Labor have put out guidance for plants to implement to help ensure employee safety to reopen plants or to continue to operate those still open. Under the Executive Order and the authority of the Defense Production Act, *USDA will work with meat processing to affirm they will operate in accordance with the CDC and OSHA guidance,* and then work with state and local officials to ensure that these plants are allowed to operate to produce the meat protein that Americans need. USDA will continue to work with the CDC, OSHA, FDA, and state and local officials to ensure that facilities implementing this guidance to keep employees safe can continue operating.

(Ex. 4, emphasis added).

47.     The Department of Health's October 22, 2020 Order, purportedly authorizing it to shut down meat processors—and, of course, the Stampede Closure Order—fly directly in the face of the President's April 28 Executive Order, and accordingly is unconstitutional.  And while the Department and the President share the same goals of curbing the spread of COVID-19, the public

health order interferes with and frustrates the President's priority that meat processors continue to operate.  As such, the Department of Health's October 22, 2020 Order and the Stampede Closure Order are preempted by the President's April 28 Executive Order and must be struck down.

**B.  The Federal Meat Inspection Act Preempts the October 22, 2020 Order and the Stampede Closure Order**

48.  Like the President's April 28 Executive Order, and per the requirements of the Supremacy Clause, the Federal Meat Inspection Act ("FMIA"), 21 U.S.C. § 601, *et seq.*, also preempts the Department of Health's mandate that Stampede Meat cease operations.

49.  Stampede Meat's New Mexico facility is subject to regulation under FMIA.  *See* FSIS Meat, Poultry and Egg Product Inspection Director at 494 (Oct. 13, 2020) (identifying Stampede Meat's Sunland Park facility as establishment number M19113N, P19113N).[1]  The FMIA  requires that all meat processing facilities, including Stampede Meat, satisfy "rules and regulations of sanitation" that are "prescribe[d]" by the U.S. Secretary of Agriculture.  21 U.S.C. § 608.  FMIA's Food Safety and Inspection Service ("FSIS") is responsible for promulgating regulations implementing the FMIA.  *See* 9 C.F.R. §§300.2(a), (b)(1).  The FMIA expressly prohibits any state from imposing regulations that are "in addition to, or different than" those promulgated by the FSIS.  21 U.S.C. §678.  As recognized by the Supreme Court in *Nat'l Meat Ass'n v. Harris,* 565 U.S. 452, 459-60 (2012), the FMIA "sweeps widely" and "prevents a State from imposing any additional or different" requirements.

50.  FSIS issued regulations regarding the prevention of infectious diseases within meat processing facilities in 9 C.F.R. § 416.5(c), which provides that "[a]ny person who has or appears

---

[1]  https://www.fsis.usda.gov/wps/wcm/connect/bf8d9766-9767-4eOc-a9f1-efeaOb2a42bc/MPI_Directory-by_Establishment_Name.pdf?MOD=AJPERES.

to have an infectious disease . . . must be excluded from any operations which could result in product adulteration and the creation of insanitary conditions. . . ." By its October 22, 2020 Order, the Defendants likewise attempt to prevent the spread of infectious disease in meat processing facilities.  However, because Defendants' October 22, 2020 Order imposes requirements different from and in addition to those imposed by the FSIS (*i.e.,* closure of meat processing plants where a certain threshold of employees test positive for COVID-19), it is preempted by the express terms of the FMIA and cannot stand.  *See, e.g., National Meat Ass'n,* 565 U.S. 452, 467-68, n. 10 (2012) (holding that California penal code regarding the treatment of non-ambulatory pigs in a slaughterhouse was preempted by the FMIA as being "in addition to, or different than" regulations governing non-ambulatory animals issued under the FMIA); *American Meat Institute v. Leeman,* 180 Cal. App. 4th   728, 762 (Cal. Ct. App. 2009) (California Proposition 65's requirement that meat products include point of sale warning labels was preempted by the FMIA where point of sale warnings were within its purview; the Proposition 65 point of sale warnings were "in addition to, or different than" the labels required by the FMIA).

51.    Accordingly, the October 22, 2020 Order and the Stampede Closure Order must be struck down as preempted by the FMIA.

## C.  The October 22, 2020 Order is an Unconstitutional Due Process Violation

52.    "A statute will be held unconstitutional in violation of due process of law, if the statute either forbids or requires the doing of an act in terms so vague that men of common intelligence must guess at its meaning and differ as to its application." *Bokum Res. Corp. v. New Mexico Water Quality Control Comm'n*, 93 N.M. 546, 549, 603 P.2d 285, 288 (1979).  New Mexico courts apply the vagueness doctrine as it applies to statutes to regulations as well.  *See id*.

53.    The United States Supreme Court has identified two main concerns with vague laws: (1) putting individuals on notice as to what is prohibited and (2) eliminating arbitrary and

discriminatory enforcement of laws by providing explicit standards for those who apply them. *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018). A party can show that a regulation, such as the one at issue here, is an unconstitutional violation of due process by demonstrating that it "permits police officers, prosecutors, judges, or juries to engage in arbitrary and discriminatory enforcement of the statute, which occurs because the state has no standards or guidelines and therefore allows, if not encourages, subjective and ad hoc application." *State v. Laguna*, 128 N.M. 345, 350, 992 P.2d 896, 901 (1999) (citing *City of Chicago v. Morales*, 527 U.S. 41, 63 (holding ordinance unconstitutionally vague because it afforded too much discretion to authorities and too little notice to citizens). Moreover, a ruling by an administrative agency is deemed arbitrary and capricious if it "provides no rational connection between the facts found and the choices made, or if it entirely omits consideration of relevant factors or important aspects of the problem at hand." *Atlixco Coal. v. Maggiore*, 125 N.M. 786, 793, 965 P.2d 370, 377 (Ct. App. 1998) (citing *Motor Vehicle Mfrs. Ass'n.*, 463 U.S. 29, 43 (1983)).

54.   The October 22, 2020 Order states that a business falling into one of five categories "must close" for a period of two weeks following the occurrence of four positive COVID-19 tests in a fourteen day period: 1) "food and drink establishment[s];" 2) "close-contact business[es],"; 3) "place[s] of lodging,"; 4) "retail space[s];" and 5) "other business[es] that pose a significant public health risk, as determined by the Department of Health." The first four categories are specifically defined types of businesses. The fifth is not. In addition, the fifth category provides no guidance or standards by which the Department of Health will determine if a business "poses a significant public health risk," nor any way for such a business to challenge such a determination (or even be involved in the determination process). Accordingly, no reasonable person can read the statute and understand whether it would apply to their business, as no standards are laid out.

55.     Moreover, Defendants' application of the October 22, 2020 Order demonstrates that it *is* being applied on a "subjective and ad hoc" basis, in violation of the Constitution. Stampede Meat is a business that is plainly within the category of "Essential Businesses," as defined in the October 22, 2020 Order.   "Essential Businesses" are plainly *excluded* as an enumerated category of businesses to which the mandatory closure provision applies and, therefore, a reasonable person would naturally read the October 22, 2020 Order as allowing Essential Businesses to remain open, even with four positive COVID-19 tests in a fourteen day period.   Yet, based upon exactly zero enumerated standards or guidelines, Defendants ordered Stampede Meat—an Essential Business—to shutter.

56.     Importantly, as of November 5, 2020, Defendants have only ordered three businesses to cease operations:  1) Stampede Meat; 2) Deming Manufactured Homes, LLC; and 3) Chaparral Materials, Inc.  Yet, as of that same date, *nineteen* businesses were included on the Rapid Response COVID-19 Watchlist for having four or more positive COVID-19 tests within the last fourteen days.  With only *three* of those businesses receiving closure orders, it must be the case that the October 22, 2020 Order is being applied arbitrarily.

57.     Included in that nineteen businesses are other food suppliers, big-box retail stores and distribution centers, restaurants and government agencies.  Given that Stampede Meat has industry-leading safety protocols, and a COVID-19 plan approved by Defendant Jimenez and the Department of Health, it is inconceivable that Stampede Meat poses any more of a "significant public health risk" than, for example, a retail operations where members of the public gather in large groups.  To the contrary, Stampede Meat is a private facility, closed to the public, and enforces strict distancing, personal protective equipment, and other measures to maximize safety. And it does so while providing essential, critical food supplies to the country.  It is somewhat

ironic, in fact, that the very retail and food service facilities that Defendants are allowing to stay open to the public despite more than four positive COVID-19 tests may actually have fewer products to sell to the public if Defendants are allowed to shutter Stampede Meat. Not only is such an application arbitrary and capricious, it is discriminatory.

58.     The arbitrary and discriminatory application of the October 22, 2020 Order is further demonstrated on the face of Section 15 of that order, which states that certain "retail spaces" may be allowed to stay open even after four positive tests if it is determined that the "business is a necessary provider of goods and services" within the community. If a determination that a business is a "necessary provider of goods and services" renders the closure order null, then it only stands to reason that a business such as Stampede Meat—designated as Essential in the very same order—would already meet the test of a "necessary provider of goods and services" such that the closure mandate does not apply. Otherwise, the October 22, 2020 Order is internally contradictory and not susceptible to interpretation by a person of common intelligence—in other words, unconstitutional.

59.     The arbitrary and discriminatory manner in which Defendants are enforcing the October 22, 2020 Order, made plain from the both the face of that order as well as its actual application, renders the order unconstitutional and it should be struck down.

## COUNT II
## DECLARATORY JUDGMENT
## 22 U.S.C. § 2201  and NM Stat § 44-6-12

60.     Stampede Meat incorporates by reference and re-alleges the allegations contained in Paragraphs 1 through 57 as if fully stated herein.

61.     The October 22, 2020 Order and the Stampede Closure Order are unconstitutional and should be invalidated. Accordingly, Stampede Meat is entitled to an order declaring both orders null and void as to Stampede Meat.

62.     Stampede Meat is further entitled to a declaration that Defendants do not have the power or authority to order the closure of Stampede Meat, to impose any restrictions or limitations on Stampede Meat's operations in excess of those contained in the FMIA or as directed by the President of the United States or the Secretary of Agriculture, or to impose any civil or criminal fine, penalty or encumbrance upon Stampede Meat arising out of the October 22, 2020 Order or the Stampede Closure Order.

**COUNT III**
**TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

63.     Stampede Meat incorporates by reference and re-allege the allegations contained in Paragraphs 1 through 59 as if fully stated here.

64.     The United States Supreme Court has stated that the "purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981); *see also Tri-State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc.,* 805 F.2d 351, 355 (10th Cir. 1986) ("In issuing a preliminary injunction, a court is primarily attempting to preserve the power to render a meaningful decision on the merits."). Although injunction is a substantial remedy, it should be granted "where the necessity for it is clearly established." *Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC,* 562 F.3d 1067, 1070 (10th Cir. 2009 (internal citation omitted).

65.     The 10th Circuit identifies four elements that a plaintiff must establish to demonstrate it is entitled to a temporary restraining order: (1) there is a substantial likelihood the movant ultimately will prevail on the merits; (2) the movant will suffer irreparable harm unless the injunction issues; (3) the threatened injury to the movant outweighs any harm the proposed injunction may cause the opposing party; and (4) the injunction would not be contrary to the public interest. *Wyandotte Nation v. Sebelius*, 443 F.3d 1247, 1254-55 (10th Cir. 2006); *People's Tr.*

*Fed. Credit Union v. Nat'l Credit Union Admin. Bd.*, 350 F. Supp. 3d 1129, 1139 (D.N.M. 2018). If a moving party can establish the first, third and fourth elements for a TRO, the party "may meet the requirement for showing success on the merits by showing that questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation." *Oklahoma, ex rel., OK Tax Comm'n v. Int'l Registration Plan, Inc.*, 455 F.3d 1107, 1113 (10th Cir. 2006).

66.     Stampede Meat has pleaded a sufficient factual basis for a temporary restraining order, for the purpose of maintaining the *status quo ante*, until such time as the Court can rule on Stampede Meat's claim for declaratory judgment.

67.     First, Stampede Meat has shown a likelihood of success on the merits, as the October 22, 2020 Order is preempted by both the April 28 Executive Order, as well as the FMIA. It is the Federal Government that has exclusive authority to regulate the safety protocols at a meat processing facility such as Stampede Meat, and Defendants are not authorized to impose restrictions upon Stampede Meat greater than those imposed by the Federal Government. With the October 22, 2020 Order and the Stampede Closure Order, Defendants are attempting to do just that. Moreover, the October 22, 2020 Order is vague on its face, and being applied in an unconstitutionally arbitrary and capricious manner, as demonstrated by the disparate treatment of those entities on the Rapid Response COVID-19 Watchlist.

68.     Second, Stampede Meat has demonstrated that it will suffer irreparable harm if an injunction is not entered. Irreparable injury is "harm that cannot be undone, such as by an award of compensatory damages or otherwise." *Salt Lake Tribune Pub. Col., LLC v. AT&T Corp*, 320 F.3d 1081, 1105 (10th Cir. 2003) (internal citation omitted). The status quo in this matter is Stampede Meat safely and appropriately operating its facility, providing critical food supply to

this country.  Defendants are seeking to upend that status quo by shuttering Stampede Meat for (at least) fourteen days, with no guarantee of if or when Stampede Meat will be allowed to re-open. In just that fourteen days, **millions of pounds** of meat will be lost and rendered useless, not to mention the countless employees who will be without work and the countless downstream consumers and businesses that will suffer.  Stampede Meat has no adequate remedy at law because, absent an injunction, the harm will be done and will be incapable of being remedied, even by a monetary recovery against Defendants.

69.     The 10th Circuit has recognized several factors that may support a finding of irreparable harm, including the "inability to calculate damages, harm to goodwill, diminishment of competitive positions in marketplace, loss of employees' unique services, the impact of state law, and lost opportunities to distribute unique products." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1263 (10th Cir. 2004).  Each element is present here.

70.     Third, the harm that will come to Stampede Meat (and the downstream consumers across this country) far outweighs any harm to Defendants or the public.  Indeed, Stampede Meat has repeatedly attempted to work with Defendants to address any concerns they may have, and has diligently implemented a safety protocol *already approved* by Defendants.  In issuing the Stampede Closure Order, Defendants could not and would not provide an answer as to why they determined that Stampede Meat's operations posed a "significant public health risk."  Plainly, it does not.  To the contrary, the public will be harmed if an injunction is *not* issued, as the national food supply will be immediately impacted, and critical infrastructure—designated as much by both the Federal Government and the State of New Mexico—will be significantly weakened.

71.     The elements required to establish that a party is entitled to a preliminary injunction are similar to the elements required for a TRO. In order to obtain a preliminary injunction, a party

must show (1) the moving party will suffer irreparable injury unless the injunction issues; (2) the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood that the moving party will eventually prevail on the merits. *Tri-State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*, 805 F.2d 351, 355 (10th Cir. 1986).

72.    The harm to Stampede Meat substantially outweighs any harm to Defendants or the public.  In other words, Defendants will suffer no harm from an injunction.  On the other hand, as discussed above, Stampede Meat will be left without an adequate remedy at law absent an injunction.

73.    Accordingly, Stampede Meat respectfully requests that this Court enter a temporary restraining order enjoining Defendants, and any individuals acting at their direction, on their behalf, or with actual notice of this order: (1) from enforcing the Public Health Order issued by Defendant Billy J. Jimenez, Acting Secretary of the New Mexico Department of Health, on October 22, 2020 against Stampede Meat; (2) from enforcing the Notice of Immediate Closure Pursuant to Public Health Order issued to Stampede Meat on November 3, 2020, thereby allowing Stampede Meat to continue its meat processing operations at its Sunland Park, New Mexico facility; and (3) from issuing any civil or criminal fine, penalty or encumbrance upon Stampede Meat arising out of the October 22, 2020 Public Health Order or the Notice of Immediate Closure Pursuant to Public Health Order issued to Stampede Meat on November 3, 2020.

74.    Stampede Meat further requests that, after a hearing on this matter, such temporary restraining order be made a preliminary injunction and remain in effect until a final trial on the merits.

## REQUESTED RELIEF

WHEREFORE, premises considered, Stampede Meat, Inc. respectfully requests the Court:

1.  Enter a Temporary Restraining Order Enjoining Defendants, and any individuals acting at their direction, on their behalf, or with actual notice of this order:

    a.  from enforcing the Public Health Order issued by Defendant Billy J. Jimenez, Acting Secretary of the New Mexico Department of Health, on October 22, 2020 against Stampede Meat;

    b.  from enforcing the Notice of Immediate Closure Pursuant to Public Health Order issued to Stampede Meat on November 3, 2020, thereby allowing Stampede Meat to continue its meat processing operations at its Sunland Park, New Mexico facility; and

    c.  from issuing any civil or criminal fine, penalty or encumbrance upon Stampede Meat arising out of the October 22, 2020 Public Health Order or the Notice of Immediate Closure Pursuant to Public Health Order issued to Stampede Meat on November 3, 2020;

2.  Upon further hearing of this matter, issue a Preliminary Injunction, to be in place pending final trial of this matter enjoining Defendants, and any individuals acting at their direction, on their behalf, or with actual notice of this order:

    a.  from enforcing the Public Health Order issued by Defendant Billy J. Jimenez, Acting Secretary of the New Mexico Department of Health, on October 22, 2020 against Stampede Meat;

    b.  from enforcing the Notice of Immediate Closure Pursuant to Public Health Order issued to Stampede Meat on November 3, 2020, thereby allowing Stampede Meat

to continue its meat processing operations at its Sunland Park, New Mexico facility; and

   c.  from issuing any civil or criminal fine, penalty or encumbrance upon Stampede Meat arising out of the October 22, 2020 Public Health Order or the Notice of Immediate Closure Pursuant to Public Health Order issued to Stampede Meat on November 3, 2020

3.  Upon final trial, issuing a declaration that the October 22, 2020 Order is unconstitutional and unenforceable;

4.  Upon final trial, issuing a declaration that the Stampede Closure Order is unconstitutional and unenforceable;

5.  Awarding Stampede Meat all costs and expenses, including reasonable attorney's fees, incurred in prosecuting this action; and

6.  Awarding Stampede Meat any other and further relief to which the Court may find Stampede entitled.

Date:  November 6, 2020            Respectfully submitted,

                                  RAY | PEÑA | MCCHRISTIAN, P.C.

                        By:    */s/ Christopher J. Tebo*
                                Christopher J. Tebo
                                Moses B. Winston
                                6501 Americas Pkwy NE, Ste. 820
                                Albuquerque, NM 87110
                                (505) 855-6000
                                ctebo@raylaw.com
                                mwinston@raylaw.com
                                *Attorneys for Plaintiff Stampede Meat, Inc.*

Michael P. Palmer  (*pro hac* pending)
BARNES & THORNBURG LLP
201 S. Main St., Suite 400
South Bend, IN  46601
Direct: (574) 237-1135
michael.palmer@btlaw.com

Thomas G. Haskins, Jr. (*pro hac* pending)
BARNES & THORNBURG LLP
2121 North Pearl Street, Suite 700
Dallas, TX  75201-2469
Direct: (214) 258-4111
thaskins@btlaw.com

## **VERIFICATION**

Under penalty of perjury, I verify that the statements of fact set forth in this VERIFIED COMPLAINT AND APPLICATION FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF are true and correct to the best of my knowledge, information and belief, and based upon a review of records available to me, except as to matters therein stated to be on information and belief.

Executed on:  November 6, 2020.

Name:  *BROCK FURLONG*
Title:  *PRESIDENT & CEO*